FILED

2026 May-29  AM 10:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JAMES RUTHERFORD
ROBINSON,

     **Plaintiff,**

v.

BIRMINGHAM INTERNATIONAL
FOREST PRODUCTS, LLC, *et al.*,

     **Defendants.**

Case No. **2:26-cv-760-HDM**

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff James Rutherford Robinson commenced this action against Defendants FCTG US Invesco, Inc. ("FCTG Invesco") and Birmingham International Forest Products, LLC ("Birmingham International") (collectively, "Defendants"), in the Circuit Court of Jefferson County, Alabama. (Doc. 1-2). Defendants subsequently removed the case to this court, arguing that it has diversity jurisdiction because Robinson fraudulently joined Birmingham International, the only non-diverse resident defendant. (Docs. 1, 8). This matter is presently before the court on Robinson's motion to remand, (doc. 6), which the court **GRANTS**.

For the reasons explained below, Defendants have not carried their heavy burden for establishing fraudulent joinder. Birmingham International is not a merely nominal or sham defendant: Robinson's state-court complaint seeks declaratory and

injunctive relief concerning an emergency arbitration order that, on its face, protects alleged confidential information, customers, suppliers, accounts, business relationships, and competitive interests associated with Birmingham International. Alabama law also requires joinder of persons whose interests would be affected by declaratory relief. Because there is at least a reasonable possibility that an Alabama court would conclude Birmingham International is a proper party to Robinson's declaratory judgment action, its citizenship may not be disregarded by this court. Defendants admit Birmingham International is a non-diverse, resident party and, therefore, have conceded that there is not complete diversity sufficient for this court to find it has subject-matter jurisdiction.

## I.    BACKGROUND

The following facts are taken from the state-court complaint, the notice of removal, and the materials submitted with the parties' jurisdictional briefing. At this stage, the court does not decide the merits of Robinson's claims or Defendants' arbitration-related defenses. The court states the facts only as necessary to decide whether it had subject-matter jurisdiction upon removal.

Robinson is an Alabama citizen, (doc. 1-2 at 5, ¶ 1), presently employed as a wholesale lumber trader with Stringfellow Lumber Company, LLC, *id.* at 7, ¶ 14. Robinson previously worked for Birmingham International, a wholesale lumber

brokerage and a wholly owned subsidiary of Forest City Trading Group, LLC. *Id.* at 6, ¶ 7; 18, ¶¶ 1, 3. While employed by Birmingham International, Robinson participated in an employee stock purchase program and acquired shares in FCTG Invesco. *Id.* at 6, ¶ 10. In connection with that program, Robinson executed a shareholder agreement with FCTG Invesco. *Id.* at 6–7, ¶¶ 10–12; (Doc. 1-1). The shareholder agreement contains a confidentiality covenant, (doc. 1-1 at 14), and an arbitration provision, *id.* at 18. Birmingham International is not a signatory to the shareholder agreement. *See id.* at 20; (Doc. 8 at 3, ¶ 7).

In his complaint, Robinson alleges that he did not sign any employment agreement, noncompetition agreement, or nonsolicitation agreement with Birmingham International. (Doc. 1-2 at 6, ¶ 8). Before leaving Birmingham International, Robinson transmitted certain records from his work email to his personal email accounts. *Id.* at 8, ¶ 15. The records allegedly included information and materials specific to Birmingham International's business, including transaction information, order quantities, pricing lists, trader compensation, and customer and supplier notes. *Id.* at 8, ¶¶ 15–16.

Acting pursuant to the shareholder agreement, FCTG Invesco initiated arbitration proceedings against Robinson before the American Arbitration Association, asserting claims for breach of the shareholder agreement and emergency injunctive relief. *Id.* at 8, ¶¶ 17–18. Birmingham International was not a

party to the arbitration. On April 24, 2026, after an evidentiary hearing, the emergency arbitrator entered an Order Granting Application for R-39 Emergency Relief. *Id.* at 8–9, ¶¶ 21–22; 17–33. The order provides, in relevant part:

> To prevent inevitable disclosure and preserve the status quo, Robinson shall refrain from directly or indirectly contacting, soliciting, servicing, or participating in transactions involving any customer, supplier, or account identified in or derived from the confidential information he exfiltrated from Birmingham, pending final determination by the AAA merits tribunal. FCTG Invesco shall submit via WebFile and serve upon Robinson a full and complete list of all such protected customers, suppliers, and accounts within two (2) business days of issuance of this Order.

*Id.* at 32, ¶ 5. FCTG Invesco submitted a list of protected customers and suppliers that Robinson alleges is forty-nine pages long and contains more than 4,300 customers and suppliers. *Id.* at 9, ¶¶ 24–25; 35–83.

On April 29, 2026, Robinson filed this action in the Circuit Court of Jefferson County, Alabama, naming both FCTG Invesco and Birmingham International as defendants. (Doc. 1-2 at 5–15). Robinson seeks declaratory and injunctive relief concerning the emergency arbitrator's order, the shareholder agreement, and his alleged right to compete, solicit, contact, service, and transact with customers and suppliers. Among other relief, Robinson seeks a declaration that he is not enjoined from "contacting, soliciting, or otherwise transacting with any customers or suppliers whether or not identified within the confidential information of

Birmingham International because he is under no noncompetition or nonsolicitation obligation." *Id.* at 1-2 at 12, ¶ iv.

On May 5, 2026, Defendants removed the action to this court. (Doc. 1). In their notice of removal and opposition to remand, Defendants acknowledge that Birmingham International is a "resident" of Alabama and "non-diverse" defendant, (docs. 1 at 6, ¶ 10; 8 at 2, ¶ 3), but they contend that Birmingham International was fraudulently joined because it is not a party to the shareholder agreement or the arbitration and has no right to enforce the emergency arbitration order, (doc. 1 at 3–4). Robinson moves to remand, arguing that Birmingham International has interests affected by the requested declaration and is therefore a proper and necessary party. (Docs. 6; 11).

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove a civil action filed in state court only if the federal district court would have original subject-matter jurisdiction over the action. 28 U.S.C. § 1441(a). One of the two main types of original federal subject-matter jurisdiction is diversity jurisdiction, which permits a court to adjudicate any case in which there is complete diversity of citizenship among the

5

parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Complete diversity means every plaintiff is diverse from every defendant, *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994), and the removing defendant bears the burden of establishing federal jurisdiction, *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001). The removal statute is strictly construed and the Eleventh Circuit has instructed district courts to resolve any doubts about subject-matter jurisdiction in favor of remand. *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). If "at any time before final judgment," the district court determines that it lacks subject-matter jurisdiction over an action removed from state court, it must remand the case. 28 U.S.C. § 1447(c).

The doctrine of fraudulent joinder permits a court to disregard a non-diverse defendant if he or she was fraudulently joined by the plaintiff solely to defeat diversity jurisdiction. *Triggs*, 154 F.3d at 1287. A defendant arguing fraudulent joinder faces a very heavy burden and must show either that "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Eleventh Circuit also recognizes a related form of fraudulent joinder where "a

6

diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287.

When evaluating fraudulent joinder, the court considers the plaintiff's pleadings at the time of removal and may consider affidavits and other evidence submitted by the parties. *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The court must resolve factual disputes and uncertainties in the governing law in favor of the plaintiff. *Crowe*, 113 F.3d at 1538. The court may not weigh the merits beyond determining whether the plaintiff's claim, or the plaintiff's basis for joining the non-diverse resident defendant, is at least arguable under state law. *Id.* "If there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants," joinder is proper and the case must be remanded. *Id.* (citation and quotation marks omitted) (emphasis added). In other words, the plaintiff "need not have a winning case" to defeat fraudulent joinder. *Triggs*, 154 F.3d at 1287.

## III.    DISCUSSION

Defendants do not contend that Birmingham International is diverse from Robinson. On the contrary, they describe Birmingham International as the "resident" and "non-diverse" defendant. (Docs. 1 at 6, ¶ 10; 8 at 2, ¶ 3). The dispositive issue is therefore whether Robinson fraudulently joined Birmingham International to defeat diversity jurisdiction. Upon careful review of the applicable law and pleadings, the court finds he did not.

### A.    The court need not remand solely because Defendants did not adequately plead Birmingham International's citizenship.

Robinson first argues that this court cannot find it has diversity jurisdiction because Birmingham International is a limited liability company and Defendants failed to properly allege the citizenship of each of its members in their notice of removal. (Doc. 6 at 8–10). Robinson is correct that, for purposes of evaluating diversity jurisdiction, a limited liability company is a citizen of each state of which any member is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). A removing party ordinarily must allege the citizenship of each of the members, but that point is not the best ground for decision here. Defendants' removal theory is that Birmingham International's citizenship should be disregarded because it was fraudulently joined. (Doc. 1). If that theory is correct, Birmingham International's citizenship would not defeat diversity, regardless of how it is alleged in the notice of removal. If, on the other hand, that

8

theory is incorrect, Defendants' own characterization of Birmingham International as a non-diverse resident defendant, (docs. 1 at 6, ¶ 10; 8 at 2, ¶ 3), is sufficient to establish the absence of complete diversity.

The court therefore assumes, consistent with Defendants' notice of removal and opposition brief, that Birmingham International is a non-diverse resident defendant whose citizenship defeats diversity if it was properly joined. The court turns to the fraudulent-joinder issue.

**B.     Birmingham International has more than a nominal interest in the declaratory relief Robinson seeks.**

Defendants' fraudulent-joinder argument rests on three related premises: (1) Birmingham International is not a party to the shareholder agreement, (2) Birmingham International is not a party to the arbitration before the American Arbitration Association, and (3) Birmingham International has no right to enforce the shareholder agreement or the emergency arbitration order. Those points may be relevant to the merits of Robinson's claims, the scope of any declaratory relief, the effect of the arbitration clause, or the proper forum for challenges to the emergency arbitration order, but they do not establish fraudulent joinder. The fraudulent joinder inquiry is *not* whether Defendants have substantial, meritorious defenses: rather, the question is whether Defendants have shown that there is *no* chance that Robinson may obtain relief from the state court on his claims against Birmingham International, or that Birmingham International has no affected interest sufficient to

9

make it a proper defendant in this declaratory judgment action. Defendants have not made that showing.

The emergency arbitration order is not limited to an abstract dispute between Robinson and FCTG Invesco over a stock-purchase agreement. The order restrains Robinson from "directly or indirectly contacting, soliciting, servicing, or participating in transactions involving any customer, supplier, or account identified in or derived from the confidential information he exfiltrated from Birmingham." (Doc. 1-2 at 32, ¶ 5). The order also required FCTG Invesco to provide a list of those protected customers, suppliers, and accounts. *Id.* Robinson alleges that the resulting list contains more than 4,300 customers and suppliers. *Id.* at 9, ¶¶ 24–25. The arbitrator's order directly ties the restraint to information allegedly taken from Birmingham International and concerning its customers, suppliers, accounts, business relationships, and competitive interests. *See id.* at 32, ¶ 5.

Those allegations matter. They show that Birmingham International's connection to this action is not contrived or collateral. Birmingham International is alleged to be the entity whose confidential information, business relationships, customers, suppliers, and competitive position are being protected by the emergency order that Robinson challenges. Robinson's requested declaration would determine, in part, whether he may contact, solicit, service, or transact with customers and suppliers identified through Birmingham International's alleged confidential

information. Any order granting or denying Robinson his sought-after declaratory relief would necessarily affect Birmingham International's interests and that is enough to overcome Defendants' fraudulent-joinder argument. *Triggs*, 154 F.3d at 1287.

**C.     Alabama's Declaratory Judgment Act supports Robinson's joinder of Birmingham International.**

Alabama's Declaratory Judgment Act provides that "[a]ll persons shall be made parties who have, or claim, any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Ala. Code § 6-6-227 (1975). In a declaratory judgment action, the proper-party inquiry is not identical to whether the plaintiff has a conventional damages claim against the defendant. A declaratory judgment determines legal relations and a defendant may therefore be a proper party because the requested declaration would affect that defendant's interests or because the plaintiff seeks a declaration that will bind that defendant.

This court has recognized and applied this principle in the fraudulent-joinder context. In *Wakefield v. Crinnian*, 44 F. Supp. 3d 1195 (N.D. Ala. 2014), the court held that a closely-held family company was not fraudulently joined in a declaratory judgment action because the company had a stake in the requested-declarations and the plaintiff intended the company to be bound by the results. *Id.* at 1204. Similarly, in insurance declaratory judgment cases, this court has recognized that parties whose

interests may be affected by coverage determinations may be proper or necessary parties, even though the coverage dispute is principally between insurer and insured. *See, e.g.*, *Andalusia Enters., Inc. v. Evanston Ins. Co.*, 487 F. Supp. 2d 1290, 1294 (N.D. Ala. 2007); *Earnest v. State Farm Fire & Cas. Co.*, 475 F. Supp. 2d 1113, 1116–17 (N.D. Ala. 2007).

This case is closer to *Wakefield* than to the cases upon which Defendants rely. Birmingham International is not merely a person who may prefer one outcome over another: Robinson alleges that Birmingham International owns or claims the confidential information at issue. (Doc. 1-2 at 8, ¶ 15). The emergency arbitration order identifies "Birmingham" as the source of the information allegedly exfiltrated by Robinson. *Id.* at 32, ¶ 5. The order restricts Robinson's ability to interact with customers, suppliers, and accounts identified in or derived from that information. *See id.* Robinson seeks a declaration that he is not barred from contacting, soliciting, or transacting with customers or suppliers identified within Birmingham International's confidential information because he is not bound by noncompetition or nonsolicitation obligations. *Id.* at 12, ¶ vi. Given those allegations, an Alabama court could reasonably conclude that Birmingham International has an "interest which would be affected by the declaration" within the meaning of the Alabama Declaratory Judgment Act. Ala. Code § 6-6-227. Defendants have not met their high burden of showing the contrary.

Defendants point out that Birmingham International is not a party to the shareholder agreement and cannot enforce it, (doc. 1 at 4), but that argument narrows the interest inquiry too far. The relevant question is not only who may sue to enforce the shareholder agreement, but, rather, whether the declaration Robinson seeks would affect any interest claimed by Birmingham International. On this record, it plainly could, as a declaration that Robinson may compete, solicit, contact, service, or transact with customers and suppliers identified through Birmingham International's allegedly confidential information would affect Birmingham International.

The fact that Birmingham International was not a party to the arbitration does not prove that it is irrelevant to this case. FCTG Invesco commenced the arbitration proceedings under a shareholder agreement. Robinson's state-court action seeks a declaration concerning the practical effect of an emergency order that allegedly protected Birmingham International's information and relationships. The fact that FCTG Invesco chose to arbitrate without Birmingham International does not establish that Birmingham International has no affected interest in the declaratory relief Robinson seeks.

**D.**   **Federal Rule 19 reinforces, but is not necessary to, the court's conclusion that Birmingham International was not fraudulently joined.**

Robinson also argues that non-diverse Birmingham International must be joined as a required party under Federal Rule of Civil Procedure 19. (Doc. 6 at 16–18). Rule 19 provides that a person must be joined if feasible when, in that person's absence, (1) the court cannot accord complete relief among existing parties or (2) the person claims an interest relating to the subject of the action and disposition in the person's absence may impair or impede the person's ability to protect the interest or leave an existing party subject to a substantial risk of inconsistent obligations. Fed. R. Civ. P. 19(a)(1).

The court need not decide definitively whether Birmingham International is indispensable under Rule 19. Birmingham International has already joined. The issue is not whether an absent party must be brought into the case, but whether Defendants may disregard and dismiss a joined non-diverse defendant as fraudulently joined. That jurisdictional question is less demanding for Robinson, as he need only show that Defendants have not eliminated every reasonable possibility that Birmingham International is a proper party whose interests are affected by the requested relief.

Even so, the concerns reflected in Rule 19 support the same conclusion. Birmingham International claims, or at least is alleged to have claimed, an interest

14

in the confidential information and business relationships underlying the emergency arbitration order. Disposition of Robinson's requested declaration in Birmingham International's absence could impair its ability to protect those interests or leave Robinson exposed to further disputes about the same alleged confidential information. The Rule 19 framework therefore does not support Defendants' position that Birmingham International is merely nominal.

**E.     The Federal Arbitration Act does not confer subject-matter jurisdiction upon this court.**

Defendants also argue that Robinson's complaint is an improper collateral attack on the emergency arbitration order and that Robinson should have proceeded under the Federal Arbitration Act (the "FAA") to vacate, modify, or correct the order. (Doc. 8 at 5, ¶ 17). Defendants may make those arguments in the proper forum. The court expresses no view on whether the emergency arbitration order is enforceable, whether it is subject to confirmation or vacatur, whether Robinson's state-court declaratory judgment action is procedurally proper, whether the Delaware choice-of-law provision governs, or whether Robinson's requested relief is barred by the FAA. Those are merits or procedural-defense questions that do not decide the threshold issue of subject-matter jurisdiction. The court's task at this stage is not to determine whether Robinson will ultimately prevail. The court asks only

whether Defendants have shown that Birmingham International has no possible legitimate role in the case and finds they have not met this burden.

The same is true of Defendants' argument that Birmingham International cannot enforce the shareholder agreement. *Id.* at 8. That argument may limit the relief Robinson may obtain against Birmingham International. It may support a motion to dismiss, a motion to compel arbitration, a motion to stay, or other relief on the merits. But it does not prove that Birmingham International's joinder is fraudulent where the challenged order expressly concerns information allegedly taken from Birmingham International and restricts Robinson's dealings with customers, suppliers, and accounts associated with that information.

## IV.   CONCLUSION

Defendants have not established that Robinson fraudulently joined Birmingham International as a party. Birmingham International has more than a nominal interest in the declaratory and injunctive relief Robinson seeks. Because Birmingham International is a non-diverse resident defendant under Defendants' own characterization, its citizenship may not be disregarded. Complete diversity is lacking, and this court lacks subject-matter jurisdiction.

Accordingly, it is **ORDERED** as follows:

1.   Plaintiff James Rutherford Robinson's Motion to Remand, (doc. 6), is

**GRANTED.**

2.      This action is **REMANDED** to the Circuit Court of Jefferson County, Alabama.

3.      The court does not award fees or costs under 28 U.S.C. § 1447(c). No separate request for fees is before the court, and Defendants' removal position, although unsuccessful, was not objectively unreasonable.

4.      The Clerk is **DIRECTED** to take all steps necessary to effectuate the remand and close this case.

**DONE** and **ORDERED** on May 29, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

17